UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CHARLES MICHAEL GOFF,<br><br>Defendants. | Case No. 2:18-cr-00200-MMD-CWH<br><br>**REPORT AND RECOMMENDATION** |

Presently before the court is defendant Michael Goff's motion to suppress (ECF No. 19), filed on September 4, 2018. The government filed a response (ECF No. 22) on September 18, 2018. Defendant filed a reply (ECF No. 25) on September 25, 2018. The court conducted an evidentiary hearing on October 1, 2018. At the conclusion of the hearing, Goff requested and obtained permission to obtain additional evidence. Goff subsequently moved to supplement the record (ECF No. 31) on October 16, 2018, the government responded (ECF No. 32) on October 29, 2018, and Goff replied (ECF No. 33) on November 2, 2018.

Goff is charged with a single count of being a Felon in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2). On August 31, 2017, law enforcement officers stopped a car Goff was driving because its registration had expired. During the stop, one of the officers saw a gun in the car. Goff moves to suppress this gun because its seizure was the result of an unjustified extension of the traffic stop, and therefore violated Goff's Fourth Amendment rights.

**I.   BACKGROUND**

Las Vegas Metropolitan Police Officer Arevalo testified that he and his partner Officer Behymer pulled over a red Mitsubishi Eclipse at about 5:55 a.m. on August 31, 2017 in Las Vegas, Nevada. Before the stop, the police had researched the plate number of the car in their

computer system and learned that it was expired. Wearing body cameras, both officers video recorded the stop and subsequent seizure of the firearm.[1] After stopping the car, Officer Arvelo approached the driver, Goff, and Officer Behymer approached the front seat passenger, Carmen Reyes, as they sat in the car. Goff provided Officer Arvelo a driver's license. Goff said his license may be expired, and that he may have traffic warrants. Behymer testified that Reyes said that she was the owner of the car, that there was an issue with the registration, and that she also believed she might have a warrant for a suspended driver's license. Reyes denied that there was anything illegal in the car the officer needed to know about, and Officer Behymer told her that his partner was checking their records and that they might be able to leave with just a warning. According to the video, two minutes and 30 seconds elapsed from the moment of the stop.

While Officer Behymer was talking with Reyes, Officer Arvelo had returned to his police car. He testified that he began checking records on his computer and confirmed that neither Goff nor Reyes had valid drivers' licenses, nor were there any outstanding arrest warrants. Goff's criminal history revealed a prior assault with a deadly weapon, multiple theft-related crimes including automobile theft, and an arrest for ex felon in possession of a firearm. Additionally, the criminal history required that Metro detectives be notified if officers had contact with Goff.[2]

Officer Arvelo testified that because of Goff's criminal record[3] and the need to conduct the traffic investigation in a safe manner, he decided to remove Goff and Reyes from the vehicle. Officer Behymer joined Officer Arvelo at the police car. At Officer Arevalo's request, both officers turned off their body cameras. Officer Arvelo testified that they turned off the body cameras because he wanted to discuss his strategy on how to safely remove Goff and Reyes from the vehicle, but he did not want to record that conversation because he felt his tactical discussions

---

[1] Government Exhibit 1.

[2] The requirement was called an "ROP," for Repeat Offender Program. Apparently, no such notification was made.

[3] Goff notes that his last gun conviction happened in 2010, and that his last assault conviction happened in 2000.

were not required to be recorded. The cameras remained off for about a one minute and 16 seconds.[4]

With his body camera reactivated, Officer Arvelo removed Goff from the vehicle, and escorted him back to the front of the patrol car. Similarly, Officer Behymer removed Reyes. Officer Arvelo asked Goff whether he had any weapons on him, and Goff indicated that he had a pocket knife. Before searching for the knife, Officer Arevalo handcuffed Goff. He testified that, for officer safety, it is normal procedure to handcuff a suspect when seizing a weapon. According to his body camera, it took two minutes to remove Goff from the vehicle, handcuff him, and conduct a pat-down for weapons besides the knife which he found. A total of about six minutes had passed since the initial stop of the vehicle.

The video reveals that Officer Arevalo then entered his patrol car on the passenger side, and he testified that he began writing the traffic citation. He testified that the drafting of a citation includes collecting information from driver documents and computer information, recording an event number, identification number, name, location of event, whether the driver was impaired, vehicle identification, and a description of the event which lead to the traffic stop. The video shows that during this time, Officer Behymer spoke with Reyes and Goff as they stood at the front of the patrol vehicle. At one point, he also shined a flash light in their eyes, apparently to test sobriety. Officer Behymer also asked for consent to search the vehicle, and Reyes asked, "do you have to?" Officer Arvelo testified that he thought it was suspicious that Reyes would look at Goff when she answered Officer Behymer's questions.[5]

---

[4] Defense Exhibit D-1 indicates that Officer Arvelo's body camera was activated from 5:55:18 until 5:59:08. Defense Exhibit D-2 indicates that body camera was reactivated at 6:00:24, so his body camera was off for one minute and 16 seconds, while he and Officer Behymer discussed strategy.

[5] While Officer Behymer was talking to Goff and Reyes, his recording stopped, and did not resume until approximately 23 minutes later. Office Behymer explained that the battery life of his body camera was about the same as the time length of his shift, and since he was at the end of the shift, the battery had drained. He explained that after leaving the camera off for a while, it came back to life for a longer period, as it sometimes does. The court finds his explanation credible – the recording contains a beeping sound which he explained was a warning that the

Officer Arvelo testified that as he sat in the patrol car preparing the traffic ticket, he decided to return to Goff's vehicle to see if there was anything in plain view that was causing Reyes to look suspicious. He testified that he based his decision on Goff's criminal history, that Goff possessed a knife but said he did not know whether he possessed other weapons, and his belief that Reyes was suspiciously looking at Goff when she answered Officer Behymer's questions. The video reveals that, at the time Officer Arvelo returned to Goff's vehicle, he had been in his patrol car for seven minutes and 30 seconds, apparently preparing the traffic citation.

The video shows that Officer Arvelo went to Goff's vehicle, looked into the passenger side and front windshield, and then returned to the patrol car and handcuffed Reyes. He testified that when he looked through the front windshield, he could see the handle of a firearm extending out from underneath the passenger seat. About 30 seconds passed from the time that walked out of his patrol car until he located the firearm. After he handcuffed Reyes and announced his discovery, Office Arvelo then took photographs of the position of the firearm before moving it. The photographs show the handle of the firearm beneath the passenger seat. It is this firearm which is the focus of the motion to suppress. Approximately fourteen minutes had elapsed from initial traffic stop to the discovery of the firearm.

**II.   ANALYSIS**

    **A.   The initial traffic stop**

A traffic stop is a seizure within the meaning of the Fourth Amendment. *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *Whren v. United States*, 517 U.S. 806, 809-10 (1996). An officer need only have reasonable suspicion to justify the seizure. *United States v. Lopez–Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000). Goff makes no argument that the initial traffic stop was unreasonable, and the court so finds.

---

battery was low. Goff makes no suggestion that anything relevant occurred during the time the camera was off.

### B. Removal of Goff and Reyes from the vehicle

Goff told Officer Aravelo that he thought he had warrants and no driver's license, so a records check was appropriate even if it was not routine police procedure. When the stop occurred, Goff and Reyes, the owner of the vehicle, were asked to produce typical documents for a traffic stop: driver's license, registration, and insurance. With documents in hand, Officer Arevalo returned to his police car and accessed his computer to obtain their background information, discovered that both subjects had records of prior arrest and convictions, including vehicle theft and unlawful possession of a firearm, and decided to remove Goff and Reyes from the vehicle. The officers then turned off their video cameras to discuss a strategy to safely remove Goff and Reyes from the vehicle. Goff makes no suggestion that anything happened during the minute and 16 seconds that the camera was not activated, except that the officers discussed removing Goff from the vehicle, and so the court assigns no significance to the brief deactivation of the camera.

Even if Goff had no criminal history, the Officers did not need reasonable suspicion to remove the Goff and Reyes from the vehicle and could do so as a matter of course. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) ("[O]nce a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures."); *see also Ohio v. Robinette*, 519 U.S. 33, 41 (1996) (reasonable to order driver out of car during traffic stop for speeding). Thus, removing Goff from the vehicle was not inappropriate, and did not measurably extend this lawful traffic stop.

### C. Handcuffing and seizure of Goff's knife

A patdown of a person for weapons requires reasonable suspicion that the person "is armed and presently dangerous to the officer or to others." *Thomas v. Dillard*, 818 F.3d 864, 876 (9th Cir. 2016) (*quoting Terry v. Ohio*, 392 U.S. 1, 24 (1968)). To establish reasonable suspicion that a person is presently armed and dangerous for the purpose of justifying a patdown, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* (*quoting Terry*, 392

U.S. at 21). Here, when Officer Arevalo lawfully removed Goff from the vehicle, he asked Goff whether he had any weapons on him, and Goff admitted that he did have a knife, and that he was not sure whether he had other weapons. The frisk for weapons was therefore reasonable because Goff admitted he possessed a knife. Officer Arevalo placed Goff in handcuffs for officer safety, which he testified is customary before obtaining a weapon from a suspect's person.

Goff does not contest the lawfulness of the seizure of the knife. He contests the propriety of his being handcuffed, indicating that it constituted an unjustified arrest. But it is well established that handcuffing a suspect does not transform a Terry stop into an arrest necessitating probable cause. *United States v. Booth*, 669 F.2d 1231, 1236 (9th Cir. 1981). Where a suspect threatens physical danger or flight, officers may use handcuffs in the course of a Terry stop. *See Washington v. Lambert*, 98 F.3d 1181, 1189 (9th Cir. 1996). Here, Goff admitted that he had a knife, and especially when combined with his criminal record, this constituted a physical danger to the officers to justify temporary handcuffing, and the court so finds.

The government argues that Goff's arrest was justified because he carried a concealed weapon in violation of Nevada Revised Statutes § 202.350. Other than asserting that the knife was a dangerous weapon, the government provided no description of the knife[6] or persuasive authority that having the knife in a pocket constitutes a violation of the statute. Accordingly, the court does not find that probable cause existed to justify Goff's arrest based upon a violation of NRS 202.350.

### D.   Writing the traffic citation

Goff argues that the traffic stop was unnecessarily extended by the officers' actions, and therefore the seizure of the firearm was unlawful. Specifically, he argues that nothing about the initial encounter and records check gave the police reasonable suspicion to believe any other violations or crime may have been committed, so Officer Arevalo's extending the stop to look into the vehicle was improper.

---

[6] The body camera video shows an object on the hood of the patrol car which Officer Arevalo identified as a knife, but the image is not clear.

Once lawfully stopped, an officer's mission includes "ordinary inquiries incident to [the traffic] stop." *Illinois v. Caballes*, 543 U.S. 405, 408 (2005). Typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance. *See Prouse*, 440 U.S. at 658-60. An officer may conduct certain unrelated checks during an otherwise lawful traffic stop, but he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual. *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015).

To determine whether a detention is longer than justified under the circumstances, it is "appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *United States v. Sharpe*, 470 U.S. 675, 686 (1985). "An officer's inquiries into matters unrelated to the justification for the traffic stop . . . do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009).

During the course of an initial investigation, the police may develop a reasonable suspicion that there may be additional criminal activity afoot and continue to investigate that additional criminal activity as well. *See, e.g., United States v. Jones*, 234 F.3d 234, 241 (5th Cir. 2000); *United States v. Jones*, 269 F.3d 919, 926-27 (8th Cir. 2001) (holding that if an officer develops reasonable suspicion regarding unrelated criminal conduct during the course of a lawful stop, "an officer may broaden his inquiry and satisfy those suspicions" without running afoul of the Fourth Amendment).

Here, the officers undisputedly had reasonable suspicion to stop Goff for the traffic citation. As discussed, they investigated Goff and Reyes in an appropriate manner by obtaining vehicle documents, removing them from the vehicle, and conducting a patdown search, all of which occurred in 6 minutes. Officer Arevalo then began drafting the traffic citation, which he testified normally takes from 8 to 10 minutes. Officer Behymer's interaction with Goff and Reyes at the same time that Officer Arevalo was writing the citation did not extend the duration of the stop. The only action taken which extended the traffic stop was when Officer Arevalo

1  interrupted his drafting of the citation for 30 seconds and walked to the vehicle and saw the
2  firearm.
3        Officer Arevalo testified that he did not finish writing the traffic citation because he had
4  discovered the firearm, and that such an unfinished citation would have been voided and made
5  part of police records. After the hearing, Goff supplemented the record with an affidavit
6  indicating that no record of a voided citation could be found by the police department.
7  Accordingly, Goff argues that the absence of a voided ticket undermines Officer Arevalo's
8  credibility, and that if there is no ticket, he was not diligently completing his investigation into the
9  traffic stop. If he was not proceeding with diligence, then he improperly extended the traffic stop.
10 The government responds that the absence of a record of a voided ticket does not mean that
11 Officer Arevalo was not preparing a ticket, and the body camera video shows he was doing so.
12       Given the absence of a voided citation, the court has carefully reviewed Officer Arevalo's
13 body camera video to determine whether he was writing a citation. Because of its angle, Officer
14 Arevalo's body camera does not show his hands during the seven minutes and 30 seconds he is in
15 his patrol vehicle. Rather, it shows that he remains in his seat, scrolls through records on his
16 vehicle computer several times, looks at Goff's documents on the dash of his vehicle, and at one
17 point, is holding a pen. Significantly, as he departs the vehicle to look at Goff's vehicle, he can
18 be seen placing a clipboard on the dashboard in front of him. It appears that the clipboard is
19 holding a form. Exhibit 1, at 11:15. In spite of the unexplained absence of a voided ticket, the
20 court finds credible Officer Arevalo's testimony that he was preparing a traffic citation up until
21 the time that he went to Goff's vehicle and found the weapon.
22       In summary, Officer Arevalo's body camera indicates that the total stop, which included
23 two minutes 30 seconds to stop Goff's vehicle and obtain vehicle documents, one minute (off
24 camera) to decide to remove Goff from the vehicle, two minutes to search Goff, seven minutes
25 and 30 seconds apparently drafting a citation, and 30 seconds to find the gun, took a total of about
26 14 minutes. Under these circumstances, the court finds that the officers were diligent in
27 investigating the traffic citation, and Officer Arevalo's action of going and looking into Goff's
28

vehicle for 30 seconds did not measurably extend the duration of the stop such that the encounter was converted into an unlawful seizure.

Given that the officers were diligent in investigating the traffic offense and did not measurably extend it when they found the firearm, further reasonable suspicion beyond the traffic stop itself was unnecessary to justify the officers' actions. In other words, it does not matter that the stop was conducted in a high-crime area, in relative darkness, that Reyes and Goff looked suspicious or nervous, that Goff has an extensive criminal history, or that Reyes refused to consent to the search of the vehicle.[7] Because the firearm was discovered in the course of the traffic stop which was not measurably extended by the officers' other concerns or actions, the temporary seizure of Goff was not converted to a seizure requiring probable cause.

### E. The discovery of the firearm

Goff argues that the firearm was not in plain view, but rather was the result of a search. The government responds that the firearm was seen by Officer Arevalo by looking through the front window. Incriminating evidence in plain view can be seized if the officer does not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. *Horton v. California*, 496 U.S. 128, 136 (1990). *See also, U.S. v. Stafford*, 416 F.3d 1068, 1076 (9th Cir. 2005) ("To fall within the plain view exception, two requirements must be met: the officers must be lawfully searching the area where the evidence is found and the incriminatory nature of the evidence must be immediately apparent."). Here, Goff's record indicated that he was a felon. Officer Arevalo's testimony of how he saw a firearm in plain view, supported by his body camera video, and how he subsequently photographed it, is uncontested. The court finds that the incriminatory firearm was in plain view, and therefore its seizure did not violate the Fourth Amendment.

---

[7] No evidence was provided to support the officers' assertion that the stop occurred in a high-crime area. Daylight was sufficient for the body camera to record the stop. Review of the body camera videos does not show any obviously suspicious or nervous behavior by Reyes or Goff. Neither Goff's criminal history in itself, nor Reyes' refusal to consent to a search, provide reasonable suspicion for a search of the vehicle.

## III. CONCLUSION

IT IS THEREFORE RECOMMENDED that defendant Michael Goff's motion to suppress (ECF No. 19) be DENIED.

IT IS ORDERED that defendant Michael Goff's motion to supplement the record (ECF No. 31) is GRANTED.

## IV. NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation may file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991).

DATED: November 6, 2018

C.W. HOFFMAN, JR.
UNITED STATES MAGISTRATE JUDGE